UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAHSHAKA TOUSSAINT,

                 Plaintiff,

         -against-

COUNTY OF WESTCHESTER, et al.,

                 Defendants.

**MEMORANDUM OPINION
AND ORDER**

21-CV-03817 (PMH)

PHILIP M. HALPERN, United States District Judge:

Jahshaka Toussaint ("Plaintiff") brings this action against the County of Westchester ("County"); the Westchester County District Attorney's Office ("WCDAO"); County Assistant District Attorney ToniAnn Gagliardi ("Gagliardi," and with the County and WCDAO, the "County Defendants"); the City of New Rochelle ("City"), the City Police Department ("NRPD"); City Police Officers Lt. Adam Castiglia ("Castiglia"), Sgt. Mario Arias ("Arias"), Ricardo Almeida ("Almeida"), Dwight Mitchell ("Mitchell"), Robert Mansfield ("Mansfield"), Stephen Parker ("Parker," and with the other City Police Officers, the "Officer Defendants"), and John Doe Officers 1-12 (with the City, NRPD, and the Officer Defendants, the "City Defendants," and with the County Defendants collectively, "Defendants").

Plaintiff asserts, in addition to eight pendent state law claims, four federal claims for relief in the First Amended Complaint ("FAC"):[1] (i) § 1983 false arrest against the City Defendants; (ii) § 1983 malicious prosecution and abuse of process against the City Defendants; (iii) conspiracy under 42 U.S.C § 1985 against the Officer Defendants and the City; and (iv) a § 1983 claim under

---

[1] The Court cites herein to the FAC's specific paragraphs when possible. However, as not all paragraphs within the FAC are numbered, the Court cites to the pagination generated by ECF when necessary.

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) ("*Monell*") against the City and NRPD. (*See generally*, Doc. 9, "FAC"). Plaintiff originally pressed his first, second, and third claims for relief against the County Defendants and his fourth claim for relief against the County. (*Id.*). Plaintiff, however, dropped his claims against all County Defendants on October 5, 2021, except those for declaratory and injunctive relief. (Oct. 5, 2021 Min. Entry).

The County Defendants, in accordance with a briefing schedule set by the Court, served their motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on November 18, 2021 (Docs. 28-29), the City Defendants served notice of their motion to dismiss under Rules 12(b)(1), 12(b)(5),[2] and 12(b)(6) on November 19, 2021 (Doc. 25; Doc. 26, "Loomba Decl."), and Defendants served a joint memorandum in support of their motions on November 19, 2021 (Doc. 27, "Def. Br."). Plaintiff served opposition to Defendants' motions on January 24, 2022. (Doc. 33, "Opp. Br."). Defendants served a joint reply brief, and the motions were fully submitted with the filing of the foregoing motion papers, on February 14, 2022. (Doc. 32).

For the reasons set forth below, Defendants' motions to dismiss are GRANTED in part.

### BACKGROUND

On Saturday April 27, 2019, Plaintiff and his "female companion" Dianna John ("John"), were eating breakfast at a diner in New Rochelle at approximately 4:40 a.m., when John noticed that she had misplaced her iPhone. (FAC ¶¶ 36-37). Plaintiff called John's phone and traced it, using an application on his own phone, to a five-unit apartment complex at 172 Sickles Avenue, New Rochelle, NY (the "Residence"). (*Id.* ¶¶ 38-41). According to the FAC, Plaintiff and John went to that apartment building, knocked on the door of a unit where they heard people talking

---

[2] Rule 12(b)(5) allows a party to move to dismiss for insufficient service of process. The City Defendants' motion under this Rule is presumably made only on behalf of Mitchell, as there is no allegation that any other Defendant was improperly served. As discussed *infra*, this motion is granted and all claims against Mitchell are dismissed on that basis.

(the "Residence"), and were greeted by an elderly Hispanic man and a young Hispanic woman ("Complainant"). (*Id.* ¶ 43). Plaintiff then called John's phone and told Complainant that he could hear it ringing inside the Residence. (*Id.* ¶ 44). Complainant allegedly called the police and, five minutes later, handed John's phone to Plaintiff and told him to leave. (*Id.* ¶¶ 45-46). Plaintiff, because he wanted to talk to the police, did not leave after receiving the phone and remained at the Residence. (*Id.* ¶ 47). The Officer Defendants arrived minutes later, escorted Plaintiff to the street level, interviewed Complainant, and ultimately placed Plaintiff under arrest. (*Id.* ¶¶ 48-50). Plaintiff alleges that, while in the back of the patrol car, the handcuffs caused him excruciating pain. (*Id.* ¶ 57). Plaintiff was taken to a police station, where he alleges that he was left "nearly naked" in a cell, wearing only pants and an undershirt. (*Id.* ¶ 57). Plaintiff was held at the station until his arraignment on Monday April 29, 2019, when he was charged with: (i) Second Degree Burglary; (ii) Second Degree Criminal Trespass; (iii) Attempted Assault; (iv) Third Degree Menacing; and (v) Second Degree Harassment. (*Id.* ¶¶ 59-62).

Plaintiff maintains that the charges were based on Complainant's witness statement and the police report filed for the incident on April 27, 2019. (*Id.* ¶¶ 63-64). Those two documents were proffered on the City Defendants' motion as exhibits to the Loomba Declaration. (Loomba Decl., Ex. B; *id.*, Ex. C).[3] Because those documents are referenced in and integral to the FAC, the Court considers them in adjudicating this motion.[4]

---

[3] Defendants state in their reply brief that "[t]he copy of Officer Parker's report attached as Exhibit C inadvertently omitted [an] updated narrative" that reflected Plaintiff's assertion that he had never entered the Residence. (Reply at 1 n. 1). However, the Court can discern no difference between Exhibit C and Exhibit F, and notes that Exhibit C includes the updated narrative at page 5. The Court, therefore, cites to Exhibit C herein.

[4] "[T]he Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken . . . ." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July

Complainant's witness statement provides that, at around 5:50 a.m. on April 27, 2019, Plaintiff banged on her door, yelled until someone answered, and then went inside once the door was opened. (Loomba Decl., Ex. B). The statement advises further that, while inside the Residence, Plaintiff told John to "get [his] gun," because Plaintiff was "going to shoot one of [the apartment residents]." (*Id.*).  The police report reflects that the Officer Defendants responded to an "active dispute," and "observed several parties having an argument," before taking control and separating the parties. (*Id.*, Ex. C at 5). The report also contains conflicting statements from Complainant and from Plaintiff—the former alleging that Plaintiff entered her apartment and the latter denying the claim.[5] (*Id.*).

Plaintiff alleges that Gagliardi refused to drop the charges against him because she had an "agenda of maliciously prosecuting an innocent African American man." (FAC ¶ 80).  The charges against Plaintiff were eventually dropped after Complainant declined to appear to testify in the state court criminal proceedings. (*Id*. at ¶¶ 80-81). Plaintiff alleges that, because of the prosecution against him, he "suffered serious emotion [sic] damages and posttraumatic stress syndrome and diagnosed with extreme depression" and that he "lost faith in the police department as a protective agency and has a fear whenever he sees or comes near a police officer." (*Id.* at 82).

This litigation followed.

---

21, 2011) (explaining that a court may consider "statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit"). Even if a document is not incorporated by reference into the complaint, the Court may consider a document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFalco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Citations to exhibits correspond to the pagination generated by ECF. Plaintiff argues that consideration of these documents is improper yet admits that they were "referenced in the Complaint." (Opp. Br. at 13). Consideration of them on a motion to dismiss is therefore entirely proper.

[5] Although Plaintiff was charged with the five crimes listed *supra*, at the time of arrest, the police report cited him for Third Degree Assault and Second Degree Burglary.

**STANDARD OF REVIEW**

I.      Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of

an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'"

*Schwartz v. Hitrons Sols., Inc*., 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction

bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc*., 15 F. Supp.

3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When

deciding a Rule 12(b)(1) motion, "the Court 'must accept as true all material facts alleged in the

complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id*. (quoting *Conyers*, 558

F.3d at 143); *see also Doe v. Trump Corp*., 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When a defendant seeks dismissal under Rule 12(b)(1) "as well as on other grounds, the

court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for

lack of subject matter jurisdiction, the accompanying defenses and objections become moot and

do not need to be determined." *Saint-Amour v. Richmond Org., Inc*., 388 F. Supp. 3d 277, 286

(S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev*., No. 09-

CV-06547, 2012 WL 4017338, at \*3 (S.D.N.Y. Sept. 10, 2012)).

II.     Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads

Case 7:21-cv-03817-PMH   Document 38   Filed 07/20/22   Page 6 of 19


factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555. [6]

---

[6] The City Defendants also move under Fed. R. Civ. P 12(b)(5) to dismiss any claims against Mitchell because he was never properly served. The City Defendants argue that service on Mitchell was improper because he had already retired from the NRPD when Plaintiff tried to serve him by serving a co-worker and mailing a copy of the summons and complaint. ("Def. Br." at 19-20). Defendants support the date of Mitchell's retirement with an affidavit submitted by Lieutenant Robert Wenzler of the NRPD. (Doc. 26-5, "Loomba Decl. Ex. D"). The Court may properly consider such an affidavit here. *Ting Qiu Qiu v. Shanghai Cuisine, Inc.*, No. 18-CV-05448, 2020 WL 2115409, at *2 (S.D.N.Y. May 4, 2020). Plaintiff does not dispute the affidavit, nor does he oppose the City Defendants' arguments as to sufficiency of process on Mitchell. Service upon a former co-worker is insufficient under Fed. R. Civ. P. 4 or under New York law. *Yongwei Zhang v. How Ho Cheng*, No. 10-CV-08560, 2011 WL 6376728, at *3 (S.D.N.Y. Dec. 19, 2011). Thus, Plaintiff's claims against Mitchell are hereby dismissed.

**ANALYSIS**

I.      Declaratory and Injunctive Relief

Plaintiff, in the wherefore clause of the FAC, seeks: (i) a "[d]eclaratory [j]udgment that defendants willfully violated [his] rights; and (ii) "injunctive relief, requiring [D]efendants to correct all past violations . . . [and] enjoin[ing] D[efendants] from continuing to violate [f]ederal and [s]tate law." (FAC at 41). Plaintiff argues that such requests constitute viable claims for relief herein. Plaintiff does not substantiate these allegations or plead any of the necessary elements of the claims for relief. These two isolated references in the wherefore clause are entirely insufficient to state claims for relief for a declaratory judgment and an injunction. *Blamah v. New York*, No. 19-CV-09234, 2020 WL 1812690, at *5 (S.D.N.Y. Apr. 8, 2020) (dismissing requests for declaratory and injunctive relief where "none of [p]laintiff's seven causes of action request injunctive relief[,] . . .[e]ach of [p]laintiff's claims of relief speak only to past practices and alleged past injustices," and "nowhere in [p]laintiff's complaint does she make reference to the elements of an injunctive or declaratory claim for relief.") Because Plaintiff does not adequately plead claims for declaratory or injunctive relief, those claims are dismissed as to all Defendants herein. Plaintiff withdrew all claims against the County Defendants except for those seeking declaratory and injunctive relief. So, with the dismissal of these claims, the County Defendants are dismissed from the case.[7]

---

[7] Defendants also seek to dismiss any equitable claims against them under Rule 12(b)(1) for lack of subject matter jurisdiction, arguing that there is no pending case or controversy for which Plaintiff could seek declaratory relief, and that Plaintiff lacks standing to seek an injunction absent a showing of an ongoing violation of his rights. (Def. Br. at 20-21). The Court agrees that even if Plaintiff did properly raise claims for declaratory and injunctive relief, those claims would be dismissed for lack of subject-matter jurisdiction. *See, e.g., Abdul-Matiyn v. Dist. Attorney's Off. Bronx Cty.*, No. 21-CV-11074, 2022 WL 523458, at *4 (S.D.N.Y. Feb. 22, 2022) ("Plaintiff cannot be seeking prospective injunctive or declaratory relief because the criminal case that forms the basis of his complaint has long since ended.").

II.     Failure to State a Claim Under Federal Law

Plaintiff brings his first four claims for relief against the remaining City Defendants under federal law, seeking monetary damages in the amount of $3,000,000 for each claim. The enabling statute for Plaintiff's first, second, and fourth claims for relief, 42 U.S.C. § 1983, provides in pertinent part that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "This language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Thus, to state a claim under § 1983, Plaintiff must demonstrate "(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a state actor." *Id*.; *see also Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-08586, 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019). The "first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff's third claim for relief is brought pursuant to 42 U.S.C. § 1985(3). A plausible claim under § 1985 requires that Plaintiff plead:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. A § 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.

*Sforza v. City of New York*, No. 07-CV-06122, 2009 WL 857496, at *18 (S.D.N.Y. Mar. 31, 2009) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

### A.   First Claim for Relief: False Arrest

"A false arrest claim under Section 1983 'incorporates the elements of the state law where the arrest took place'—here, New York." *Johnson v. City of New York*, No. 18-CV-06256, 2020 WL 2732068, at *3 (S.D.N.Y. May 26, 2020) (quoting *Youngblood v. City of New York*, No. 15-CV-03541, 2019 WL 6216498, at *5 (S.D.N.Y. Nov. 21, 2019)). As such, to state a claim for false arrest under § 1983, Plaintiff must plead "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted).

However, "probable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of New York & New Jersey*, 615 F.3d 129, 139 (2d Cir. 2010)); *see also Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011); *McClenic v. Shmettan*, No. 15-CV-00705, 2016 WL 3920219, at *4 (E.D.N.Y. July 15, 2016) (explaining that "probable cause is a complete defense to a false arrest claim, even where the plaintiff was ultimately acquitted of the criminal charges") (internal quotation marks omitted)). Defendants argue that probable cause to arrest existed here.[8] (*See* Def. Br. at 4-8). The Court agrees.

"Probable cause to arrest . . . exists when the officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a

---

[8] Given the Court's determinations herein, it does not reach the City Defendants' argument as to arguable probable cause. (*See* Def. Br. at 8).

crime." *Wierzbic v. Howard*, 836 F. App'x 31, 34-35 (2d Cir. 2020) (internal quotation marks omitted). This standard is an objective one and evaluates "the reasonable conclusion to be drawn from the facts known to the officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). This standard requires that a court consider "the totality of the circumstances and . . . be aware that probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted). Moreover, "[t]he arresting officer need not have had probable cause to arrest the plaintiff for the specific offense invoked by the officer at the time of the arrest, or the offense with which the plaintiff was charged." *Tompkins v. City of New York*, 50 F. Supp. 3d 426, 433 (S.D.N.Y. 2014). Rather, probable cause "to arrest the suspect of any crime" will suffice. *Coleman v. City of New York*, No. 03-CV-04921, 2009 WL 705539, at *3 (E.D.N.Y. Mar. 16, 2009); *see also Butler v. Brito*, No. 15-CV-09718, 2017 WL 2116687, at *3 (S.D.N.Y. May 15, 2017). If there is reason to doubt a witness' credibility, corroborating evidence can support probable cause. *See Brodie v. Fuhrman*, No. 07-CV-04212, 2010 WL 1189347, at *5-6 (E.D.N.Y. Mar. 29, 2010).

The City Defendants argue, on the facts alleged in the FAC, that there was probable cause to arrest Plaintiff for: (i) criminal trespass in the second degree because Plaintiff "knowingly enter[ed] or remain[ed] unlawfully in a dwelling" in violation of N.Y. Penal Law § 140.15; and (ii) burglary in the second degree because "he knowingly enter[ed] or remain[ed] unlawfully in a building with intent to commit a crime therein, and when . . . in the building . . . threaten[ed] the immediate use of a dangerous instrument" or "knowingly enter[ed] or remain[ed] unlawfully in a building with intent to commit a crime therein and . . . [t]he building is a dwelling" in violation of N.Y. Penal Law §§ 140.25(1)-(2). (Opp. Br. at 7 (alterations in original)). That either of these two

10

crimes differs from that with which Plaintiff was charged in the police report is irrelevant to the issue of probable cause, which only requires Defendants to have believed *some* crime to have been committed. *See Tompkins*, 50 F. Supp. 3d at 433. Based on Complainant's statement to the Officer Defendants, which alleged, *inter alia*, that Plaintiff came into her apartment, yelled at the residents, attempted to hit her, and threatened to use a gun, the Officer Defendants had sufficient probable cause to believe that Plaintiff had committed a crime. (*See* Loomba Decl., Ex. B).

Plaintiff raises two arguments against the existence of probable cause: (i) Complainant's testimony was unreliable because Plaintiff told a different story to the Officer Defendant at the time of the incident; and (ii) that the Officer Defendants apprehended Plaintiff in the hallway outside the Residence contradicts Complainant's assertion that Plaintiff had ever entered it, and that, because Complainant's account was not reliable, the Officer Defendants ought to have conducted additional investigation at the scene. (Opp. Br. at 13-14). These arguments are unavailing because the Officer Defendants were entitled to rely on the Complainant's statement, despite Plaintiff's protestation thereto or the alleged inconsistency. "Police officers have 'no duty to investigate an exculpatory statement of the accused, and their refusal to do so does not defeat probable cause.'" *Guerrero v. City of New York*, No. 12-CV-02916, 2013 WL 5913372, at *4 (S.D.N.Y. Nov. 4, 2013) (quoting *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 135 (E.D.N.Y 1998)). This rule exists because "requiring police officers to investigate exculpatory statements of the accused before making an arrest 'would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming it wasn't me.'" *Id.* (quoting *Mazza v. City of New York*, No. 98-CV-02343, 1999 WL 1289623, at*5 (E.D.N.Y. July 13, 1999)). The Officer Defendants were, therefore, entitled to rely on Complainant's statement to support probable cause and were not obligated to investigate every alleged inconsistency at the time. *See Hamilton v. City of New York*,

No. 15-CV-04574, 2019 WL 1452013, at *11 (E.D.N.Y. Mar. 19, 2019) ("[I]it is well-settled that hearsay can establish probable cause . . . ." (internal quotation omitted)). Simply put, "Plaintiff's allegations . . . that the officers had reason to doubt the complaining victims or witnesses' stories, are conclusory." *Guerrero*, 2013 WL 5913372, at *5 (internal quotation omitted).

Moreover, even "[i]f there is reason to doubt a witness' credibility, corroborating evidence can support probable cause." *Brodie*, 2010 WL 1189347, at *5-6. It is undisputed that Complainant called the police and that the Officer Defendants discovered Plaintiff just outside the Residence, in an "active dispute" with Complainant, at the time they arrived. These facts corroborate her account, even if there is otherwise a dispute as to her credibility. "Probable cause to arrest depends upon the totality of the circumstances surrounding the arrest." *Ventillo v. Falco*, No. 19-CV-03664, 2020 WL 7496294, at *8 (S.D.N.Y. Dec. 18, 2020).

Viewing the FAC in the light most favorable to Plaintiff and giving him the benefit of every inference, the totality of the circumstances warrants a finding that a person of reasonable caution would believe that Plaintiff committed a crime.

The existence of probable cause defeats Plaintiff's false arrest claim, and his first claim for relief is, therefore, dismissed.

### B.   Second Claim for Relief: Malicious Prosecution and Abuse of Process

Plaintiff styles his second claim for relief as one for malicious prosecution *and* abuse of process, both brought under 42 U.S.C. § 1983. Because malicious prosecution and abuse of process are different claims, the Court addresses them separately.

#### i.   Malicious Prosecution

As with false arrest, "[i]n order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must . . . establish the elements of a malicious prosecution claim

under state law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting

*Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). Accordingly, a plaintiff

must allege: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2)

termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the

proceeding; and (4) actual malice as a motivation for defendant's actions." *Id*. (internal quotation

marks omitted). However, when pressing a malicious prosecution claim under § 1983, the plaintiff

must show also "that there was (5) a sufficient post-arraignment liberty restraint to implicate his

Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir.

2000).

The City Defendants argue that: (i) they did not initiate the prosecution against Plaintiff;

(ii) the proceeding against Plaintiff was terminated on procedural grounds and therefore not in his

favor; and (iii) there was probable cause to initiate the prosecution.

Plaintiff's malicious prosecution claim fails at the first element because neither the City,

nor any of the Officer Defendants, "initiated" the prosecution against him. Only Parker, of the City

Defendants, was involved past the arrest stage, when he signed a felony complaint charging

Plaintiff with Second Degree Burglary. (*See* Loomba Decl., Ex. D).[9] However, this is insufficient

to establish that Parker initiated the prosecution, because the decision to do so was made by the

District Attorney. *Bernstein v. City of New York*, No. 06-CV-00895, 2007 WL 1573910, at \*6

(S.D.N.Y. May 24, 2007) ("Although Plaintiff has charged that [the officer] . . . swore to and

signed a felony complaint, [the] District Attorney . . . appears to have made the decision to

prosecute [p]laintiff . . . ." (internal quotation omitted)).

---

[9] The Court can and does take notice of this document because it is referenced in and integral to the FAC.
(*See, e.g.*, FAC at ¶ 95).

"In general, courts presume the prosecutor exercises independent judgment in deciding whether to initiate or continue a criminal proceeding." *Ventillo*, 2020 WL 7496294, at *11 (quoting *Williams v. City of New York*, No. 06-CV-06601, 2009 WL 3254465, at *8 (E.D.N.Y. Oct. 9, 2009)). This decision by a prosecutor breaks the chain of causation for purposes of a malicious prosecution claim as to a police officer. *Id*. (citing *Bernstein*, 2007 WL 1573910, at *6). The only exception is if "there is 'evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment.'" *Id.* (quoting *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999)). Here, there is no allegation in the FAC that the City Defendants misled or pressured the WCDAO or Gagliardi, who independently prosecuted Plaintiff. The FAC merely re-states Plaintiff's allegations relating to his first claim for relief, i.e. that Complainant was untrustworthy and the Officer Defendants trusted her word over his. (FAC ¶¶ 100-102). Plaintiff reiterates these arguments once again in his opposition brief, but does make two statements potentially relevant to whether the City Defendants initiated the prosecution.

Plaintiff first states that "Gagliardi conspired with the police officers to falsely charge [Plaintiff' with [f]elony crimes that were fabricated." (Opp. Br. at 19). As discussed *infra*, Plaintiff fails to adequately allege any such conspiracy. *See Jackson v. Seewald*, No. 11-CV-05826, 2013 WL 149341, at *12 (S.D.N.Y. Jan. 14, 2013) ("A complaint 'must present facts tending to show agreement and concerted action. Without a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy.'" (quoting *Fisk v. Letterman*, 401 F.Supp.2d 362, 376 (S.D.N.Y. 2005)). Plaintiff's second argument that "police had knowledge of the false accusations in the report but continued to falsely incarcerate, and persuade the DA, to prosecute using the false report" is also conclusory. (Opp. Br. at 20). Even assuming the police report

14

contained false allegations, which is not at all clear, Plaintiff provides no factual predicate for the assertion that the Officer Defendants "persuaded" Gagliardi to prosecute.

Plaintiff offers no concrete allegations for his assertion that the Officer Defendants played any role in Gagliardi's decision to prosecute. Absent a non-conclusory allegation to this effect, Gagliardi's independent decision breaks the chain of causation to the City Defendants for purposes of the first element of a malicious prosecution claim. Because Plaintiff's malicious prosecution claim fails at the first element, the Court need not and does not address the City Defendant's remaining arguments. Plaintiff's malicious prosecution claim is, accordingly, dismissed.

ii.   Abuse of Process

An abuse of process claim made under § 1983 incorporates the corresponding state law elements of abuse of process. *Sforza*, 2009 WL 857496, at \*16. To state such a claim, Plaintiff must show that Defendants "'(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Id.* (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)).  Here again, the existence of probable cause is fatal to a claim for relief. *Id*. at \*17 ("While a lack of probable cause is not explicitly an element of an abuse of process claim, the presence of probable cause negates a claim for abuse of process, particularly the second element."); *see also Kelsey v. Rutledge*, No. 21-CV-04298, 2022 WL 2110436, at \*6 (S.D.N.Y. June 10, 2022) ("The existence of probable cause for Defendants to issue [an] accusatory instrument . . . precludes Plaintiff's claim of abuse of process."). Accordingly, this claim for relief must be dismissed.

Separately, Plaintiff does not allege any specific legal process that the City Defendants abused. For that reason as well, there is no plausible claim for abuse of process here against the

City Defendants. To the extent this claim is based on Plaintiff's arrest, for the reasons discussed *supra*, the claim fails because the City Defendants established the existence of probable cause. To the extent Plaintiff's claim is based on his prosecution, for the reasons discussed *supra*, the City Defendants were not involved.

Plaintiff's second claim for relief is, therefore, dismissed.

C.   Third Claim for Relief: Conspiracy

Plaintiff alleges the same conduct by the City Defendants as the underlying conspiratorial acts supporting his third claim for relief, under 42 U.S.C. § 1985(3), as for his false arrest, malicious prosecution, and abuse of process claims. Because, as explained *supra*, Plaintiff fails to state an underlying violation of his rights based on Defendants' conduct, this claim necessarily fails. *See Sforza*, 2009 WL 857496, at *18 (granting summary judgment dismissing a § 1985 conspiracy claim for lack of an underlying conspiratorial act).

Plaintiff alleges "no facts upon which it may be plausibly inferred that the defendants came to an agreement to violate his constitutional rights." *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012). Plaintiff's conclusory assertion that Defendants "conspired," without any additional allegation to support a true meeting of the minds, is insufficient to state a claim for a conspiracy to violate his civil rights. *See Jackson*, 2013 WL 149341, at *12 ("[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." (internal quotation omitted)). Plaintiff's fleeting mention of "racial or other class-based discriminatory animus" required for a § 1985 conspiracy claim is insufficient to state such a claim.[10] Moreover, because Plaintiff's claims

---

[10] To the extent Plaintiff makes new allegations relating to racial animus in his opposition brief, such as that Complainant is "white" rather than "Hispanic" as alleged in the FAC, the Court disregards those new allegations. *See Town & Country Adult Living,* 2019 WL 1368560, at *14 ("It is well established that a

against the County Defendants were dismissed, the intra-corporate conspiracy doctrine bars Plaintiff's conspiracy claim against the only remaining Defendants here, the City Defendants, because they are members of the same corporate entity. *See Pajazetovic v. City of Utica, New York*, No. 18-CV-01496, 2021 WL 4440473, at *11 (N.D.N.Y. Sept. 27, 2021) ("Courts in the Second Circuit recognize the intracorporate conspiracy doctrine, which holds that the officers, agents, and employees of a single corporate entity are legally incapable of conspiring together." (internal quotations omitted)); *Little v. City of New York*, 487 F. Supp. 2d 426, 442 (S.D.N.Y. 2007) (dismissing conspiracy claims under the intra-corporate doctrine because "Plaintiff alleges that police officers conspired with each other to violate his rights, but all the police officers . . . are part of a single corporate entity" (internal citation omitted)).

Plaintiff's third claim for relief is, therefore, dismissed.

### D.   Fourth Claim for Relief: *Monell* Liability

Plaintiff's fourth claim for relief is brought under *Monell* against the City and NRPD. Under *Monell* and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-07273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020) ("Plaintiff must plead allegations that 'the government body *itself* subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.'" (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original)). "[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Triano v. Town of Harrison, New York*,

complaint may not be amended by the briefs in opposition to a motion to dismiss.").

17

895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). Such a claim "cannot lie in the absence of an underlying constitutional violation." *Galgano v. Cty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017)).

Because Plaintiff fails to plausibly allege a violation of a constitutional right, any *Monell* claim must be dismissed. *See Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) ("Because [the plaintiff] was unable to establish an underlying violation of his constitutional rights . . . his . . . *Monell* claim necessarily fail[s] as well."); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

Even if Plaintiff sufficiently pled a constitutional violation, his *Monell* claim would nevertheless fail for lack of facts supporting the existence of a municipal policy or practice, because Plaintiff only alleges facts relating to his own claim. *See, e.g.*, *Smith v. Westchester Cty.*, No. 19-CV-01283, 2019 WL 5816120, at *5 (S.D.N.Y. Nov. 7, 2019) (dismissing *Monell* claim where plaintiff "describe[d] only his own experiences"); *Oriental v. Vill. of Westbury*, No. 18-CV-03878, 2019 WL 4861413, at *4 (E.D.N.Y. Oct. 2, 2019) (dismissing *Monell* claim where "the complaint contain[ed] only a detailed account of plaintiffs' own experiences").

Plaintiff's fourth claim for relief is, therefore, dismissed.

III.   Pendent State Law Claims

Plaintiff's remaining eight claims for relief are all brought pursuant to New York state law. However, because the Court has dismissed all of Plaintiff's federal claims, it declines to exercise

18

jurisdiction over his state law claims. *See, e.g., McLeod v. Jewish Guild for the Blin*d, 864 F.3d 154, 158 n.6 (2d Cir. 2017) ("Of course, a district court may decline to exercise supplemental jurisdiction over state and local law claims if it has dismissed all claims over which it has original jurisdiction."). Moreover, "because the Court declines to exercise jurisdiction over Plaintiff's state law claims, the Court need not and does not reach Defendants' substantive arguments for dismissal of those claims." *Jones v. Westchester Cty.*, No. 20-CV-08542, 2022 WL 1406591, at *6 n.7 (S.D.N.Y. May 4, 2022). Those claims are, therefore, dismissed without prejudice.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED in part and Plaintiff's first, second, third, and fourth claims for relief are DISMISSED with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's fifth through twelfth claims for relief, which are dismissed without prejudice.

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 25 and Doc. 28 and close this case.

**SO ORDERED:**

Dated:   White Plains, New York
        July 20, 2022

_____
PHILIP M. HALPERN
United States District Judge